IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

FILED
SEP 19 2008
William B. Guthrie
Clerk, U.S. District Court
By_____
Deputy Clerk

TERRY LEE WILHELM,

    Plaintiff,

v.

JUSTIN JONES, et al.,

    Defendants.

No. CIV 07-344-RAW-SPS

## OPINION AND ORDER

This action is before the court on the defendants' motion to dismiss or for summary judgment. The court has before it for consideration plaintiff's complaint, the defendants' motion, and a special report prepared by the Oklahoma Department of Corrections (DOC) at the direction of the court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

Plaintiff, an inmate in the custody of DOC who is incarcerated at Oklahoma State Penitentiary (OSP) in McAlester, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking monetary damages for alleged constitutional violations arising from his transfer from Oklahoma State Reformatory (OSR) in Granite, Oklahoma, to OSP. The defendants are DOC Director Justin Jones, former OSP Warden Mike Mullin, and current OSP Warden Marty Sirmons.[1]

---

[1] To the extent the defendants are sued in their official capacities as DOC officials, plaintiff's claims are barred by the Eleventh Amendment. It is well settled that a damages suit against a state official in his official capacity is merely another way of pleading an action against the State. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988) (state officials sued in their official

Plaintiff alleges the defendants have denied him due process and liberty and have subjected him to cruel and unusual punishment. He claims he was an inmate at OSR on July 10, 2005, when the Aryan Brotherhood murdered an inmate. He was an informant about the crime for the Oklahoma State Bureau of Investigation (OSBI) and DOC Internal Affairs, and he was assured that he would be transferred to "somewere [sic] nice" where he would "never be in harm's way" [Docket #1 at 9]. While under protective measures at OSR, some the of Aryan brotherhood inmates sent him kites threatening his life. Plaintiff gave the kites to the OSBI and DOC Internal Affairs, and on October 19, 2005, he was transferred to OSP, where he was housed on the same unit as the leader of the Aryan Brotherhood.

Two leaders of the OSP Aryan Brotherhood asked plaintiff why he was sent to OSP without a misconduct and why he was not on H-Block. He told them he was transferred because he had refused to talk at OSR. The two Aryan Brotherhood inmates asked plaintiff if he wanted to make some money, and they told him about a scam they and some of the administrative staff had started in order to get money from DOC. They offered plaintiff money to start a knife fight and to stab one of the Aryan Brotherhood inmates. They assured plaintiff he would not get into any trouble, because certain administrative staff were involved in the scam. Plaintiff told the Aryan Brotherhood inmates he would have to think about it, and that night he submitted a Request to Staff asking to be housed on another unit. The Request to Staff was not answered, so he sent a letter to Defendant DOC Director Justin Jones on November 28, 2005, advising of the dangerous situation and asking to be moved, but Defendant Jones waited nine days to respond. The two Aryan Brotherhood inmates

---

capacities are not "persons" for purposes of a § 1983 suit, because the suit is against the official's office and not against the official).

2

talked with plaintiff again, offering him more money for his participation in the scam, and telling him that a female staff member would be murdered. Plaintiff wrote letters to the deputy warden and Defendant Warden Mike Mullin about the situation. He alleges the Aryan Brotherhood had a "KOS" (Kill on Sight) hit on him and a reward for the addresses of his loved ones. After speaking with the warden and DOC Internal Affairs, plaintiff was locked in a high-max cell, pending investigation. His cell mate who also was an informant on the same issues, however, was placed in a regular cell. Plaintiff also claims he has received false misconducts at OSP, and he lost 365 earned credits, his television, and his cards.

Plaintiff alleges in Count I of his complaint that he was transferred to OSP under protective measures, because he had been an informant for the DOC and the OSBI. He claims the DOC and the OSBI had knowledge of threats on his life by the Aryan Brotherhood, but the defendants were deliberately indifferent to his safety. In Count II plaintiff contends Defendant DOC Director Justin Jones received a letter from him on November 28, 2005, requesting a response to the alleged danger from the OSP Aryan Brotherhood. Plaintiff asserts Defendant Jones discriminated against him and failed to protect him until December 2, 2005. In Count III plaintiff alleges he has been punished for exercising his First Amendment right of free speech, because he has been confined to high-max solitary confinement for busting a scam involving OSP staff and for taking his complaint to court.

The defendants have filed a motion to dismiss or for summary judgment, alleging this lawsuit must be dismissed, because plaintiff failed to exhaust administrative remedies for any of his claims. The defendants further allege the issue of whether plaintiff has exhausted his

3

administrative remedies for the claims concerning failure to protect, discrimination, and negligence previously were litigated.

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). According to DOC Policy OP-090124, "Inmate/Offender Grievance Process," an inmate first must attempt to resolve his complaint informally. If that is unsuccessful, he may submit a Request to Staff. If the complaint still is not resolved, he then may file a grievance. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority or the Chief Medical Officer. The administrative process is exhausted only after all of these steps have been taken.

The record shows that on October 19, 2005, plaintiff was transferred from OSR to OSP and placed on the F Cellhouse's fourth floor for his own safety, because he had assisted the Internal Affairs Unit with an investigation at OSR. On November 28, 2005, he sent a letter to the DOC Director which was received by the Director's Designee in DOC's Administrative Review Office. Plaintiff's letter stated he was concerned about his placement in the F Cellhouse because, according to plaintiff, Inmates John Fisher and Kenneth

4

Funkhouser has asked him to assist in a staged stabbing of Inmate Fisher. According to plaintiff, the purpose of the staged stabbing was to obtain money from DOC, and plaintiff stated he feared these two inmates might harm him or cause him to be harmed.

On December 2, 2005, plaintiff was moved from F Cellhouse and temporarily housed in the Medical Unit. There was no evidence he had been physically harmed or needed medical care. He was moved to the facility's protective custody unit four days later. On December 8, 2005, an Intrafacility Assignment Form was completed, indicated the administration had assigned plaintiff to the protective custody unit at OSP for his own safety.

On December 6, 2005, the Director's Designee responded to plaintiff's November 28, 2005, letter to the DOC Director, advising that she had faxed it to Warden Mullin. When Warden Mullin's office received notice of the letter's contents, an Internal Affairs investigation was initiated. In a May 10, 2006, letter to plaintiff, Bobby Boone, DOC Deputy Director, explained that placement in the high-max cell was not punishment, but was for plaintiff's safety. The investigation eventually was completed on April 13, 2007, and the alleged plot involving the Aryan Brotherhood could not be verified. On January 10, 2007, a Special Inmate Management System form was completed, indicating plaintiff had informed OSP officials that he should be separated from Inmates Kenneth Funkhouser and John Fisher. Based on plaintiff's statements, he is not placed near those two inmates.

On March 28, 2006, plaintiff filed a lawsuit against Justin Jones and Mike Mullin in Pittsburg County District Court, Case No. C-06-282, raising claims asserted in this federal civil rights action. The state court case was dismissed for plaintiff's failure to exhaust the state court remedies for his claims. *Wilhelm v. Jones*, No. C-06-282 (Pittsburg County Dist. Ct. July 13, 2006).

5

On June 30, 2006, more that eight months after his transfer to OSP, plaintiff sent a Request to Staff to Case Manager Bessie Greenway, asking why he had been transferred from OSR to OSP. Ms. Greenway's response informed him that he had been transferred because he had assisted DOC's Internal Affairs Unit with an investigation at OSR, and his assistance may have caused him a risk of harm from other inmates. Plaintiff filed a grievance on this issue on July 12, 2006, requesting a transfer to another location and money to assist his family in moving to a safe place. On July 27, 2006, the acting facility head responded with an explanation that plaintiff was placed in protective custody in a high-max cell while the Internal Affairs Unit completed its investigation of the information in plaintiff's letter. The facility head further stated that plaintiff's placement in protective custody indicated the staff were acting to ensure his safety. Plaintiff appealed this response to the Director's Office.

On August 16, 2006, the Director's Designee returned plaintiff's attempted appeal unanswered, because it did not comply with DOC's grievance policy. Plaintiff was advised that the grievance duplicated another grievance, and he had used red ink. In addition, it was improperly submitted after plaintiff had initiated litigation on the issue in state court, when DOC policy states that an issue is not grievable if the issue is the subject of ongoing litigation. The Director's Designee warned plaintiff that his continued submission of grievance documents that did not comply with DOC's grievance policy could result in imposition of restrictions on his filing of grievances.

On July 28, 2006, plaintiff submitted a grievance directly to the Director's Designee, making the same request as the grievance submitted on July 12, 2006. On August 21, 2006, the Director's Designee returned the grievance unanswered and advised him that it violated

6

the grievance policy in six respects. In addition to other violations, the grievance was out of time, failed to include a response from the facility head, and was improperly submitted after plaintiff had initiated litigation on the issue.

Plaintiff filed six new grievances on December 28, 2006. In Grievance #06-340 he asked to be moved from the high-max cell and to have access to jobs and programs that are available to general population inmates. In Grievance #06-341 he requested placement in protective custody, even though he already was in protective custody. In Grievance # 06-342 plaintiff stated he was being punished and asked that the unnecessary psychological and physical abuse be stopped. He also claimed in this grievance that he was being threatened, but also complained about being placed in a high security, single cell. In Grievance #06-343 plaintiff requested that the reviewing authority answer his requests and grievances in accordance with DOC policy. In Grievance #06-344 he requested that staff "stop conspiring with cohorts" to deny him safety and to stop being indifferent, based on the same facts as the other grievances. In Grievance #06-345 he again asked for programs and for higher classification levels.

On December 28, 2006, the same day plaintiff submitted the six grievances, Warden Sirmons returned the grievances and warned him that his abuse of the grievance process could result in his being placed on grievance restriction. On January 12, 2007, plaintiff resubmitted the same six grievances. Warden Sirmons again returned the grievances unanswered and outlined how the grievances violated grievance policy. In addition, Warden Sirmons reminded plaintiff that he had been warned about violating the grievance policy, and plaintiff was placed on grievance restriction.

On January 29, 2007, plaintiff improperly submitted a Request to Staff directly to the

7

Director's office, asking the Director to require the warden to lift the grievance restriction and to force the warden to respond to his previous improperly submitted grievances. On February 6, 2007, the Director's Designee rejected and returned plaintiff's improperly submitted Request to Staff, explaining that the submission violated DOC policy.

On October 12, 2006, plaintiff received a Class X misconduct for Battery and 365 earned credits were revoked as punishment. Pursuant to Property Policy OP-030-120, his television was confiscated, because he was demoted to Earned Credit Level 1, in accordance with Policy OP-060107. Plaintiff's property records show no record of his ever being in possession of playing cards.

The court has carefully reviewed the record and construes plaintiff's pleadings liberally. *Haines v. Kerner*, 404 U.S. 519 (1972). The record, however, shows that plaintiff has failed to exhaust his administrative remedies in accordance with DOC policy for any of the claims asserted in this action.

**ACCORDINGLY,** this action is, in all respects, DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies, pursuant to 42 U.S.C. § 1997e.

**IT IS SO ORDERED** this 19th day of September 2008.

                                      **RONALD A. WHITE**
                                      **UNITED STATES DISTRICT JUDGE**